UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| METLIFE INVESTORS USA INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:07CV00130 ERW |
| | ) | |
| VERONICA L. KIRK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Estate of Julius L. Allen's Motion for Summary Judgment [doc. #19], MetLife Investors USA Insurance Company's ("MetLife") Motion for Summary Judgment [doc. #22] and Joan Moore's ("Moore") Motion for Summary Judgment[1] [doc. #24]. For reasons hereafter stated, all motions will be denied.

**I.  BACKGROUND FACTS**[2]

Julius L. Allen ("Mr. Allen") and Moore were an unmarried couple, living together. Bill Steck[3] ("Mr. Steck") is a Financial Advisor with William Steck, Inc. (d/b/a Kasper Steck Wealth Management), and he primarily manages retirement portfolios. Around February 2003, Mr. Allen

---

[1] In this Motion, Defendant Joan Moore adopts by reference the Motion for Summary Judgment of Plaintiff Metlife Investors USA Insurance Company.

[2] The Court's recitation of the facts is taken from Defendant Estate of Julius L. Allen's Statement of Facts [doc. #21], MetLife's Statement of Uncontroverted Material Facts [doc. #25], and the responses and replies to these documents.

[3] Neither Bill Steck, William Steck, Inc., or Kasper Steck Wealth Management are named parties in this litigation.

and Moore were employees of SBC Communications ("SBC"), and they attended a workshop regarding retirement investing that Mr. Steck presented in Sikeston, Missouri, for SBC employees. After this meeting, Mr. Allen and Moore requested a meeting with Mr. Steck. Mr. Steck met jointly with Mr. Allen and Moore in or around May, July and August 2003. At these meetings, Mr. Steck advised them on their retirement investments.

On July 16, 2003, Mr. Allen executed documents opening a Premiere Select IRA with National Financial Services. This IRA was a gathering account that was used to roll Mr. Allen's lump sum distribution from his retirement from SBC and his 401(k) while the investment plan was being developed. On Mr. Allen's IRA, he named Moore as primary beneficiary, and Veronica L. Kirk ("Defendant Kirk") as contingent beneficiary.

Mr. Allen chose to invest his retirement funds in a MetLife Annuity. He completed the MetLife Variable Annuity Application for Account No. 3200894457 ("Annuity Application") on August 8, 2003. He did not complete the beneficiary section of the Annuity Application. Mr. Allen submitted the Annuity Application to Mr. Steck, who then submitted the forms to MetLife with the beneficiary designation section left blank.

All of these meetings with Mr. Steck were attended by both Mr. Allen and Moore. Both Mr. Allen and Moore chose the MetLife Annuity as the vehicle to invest their retirement funds, and both completed MetLife variable annuity applications, however, neither Mr. Allen nor Moore completed the beneficiary designation sections of their annuity application, indicating to Mr. Steck that they were still contemplating their beneficiary designation. Mr. Steck recalls that several weeks after the annuity applications were completed, Mr. Allen and Moore called him. Mr. Steck stated that in this phone call, Mr. Allen said that he intended Moore to be his beneficiary and

Moore stated that she wanted Mr. Allen to be her beneficiary.[4] Mr. Steck testified at his deposition that they both asked him to send them beneficiary designation forms, and that he complied with their requests, directing them to complete the forms and return them directly to MetLife.

On August 21, 2003, a representative from MetLife contacted Mr. Steck's office regarding the missing beneficiary designation on the Annuity Application. Mr. Steck's assistant, Adam Bieser, orally informed MetLife's representative that Mr. Allen wanted Moore to be his beneficiary.[5] MetLife issued Moore and Mr. Allen's Annuity Contracts on September 8, 2003, with Amendment of Application to each, to be signed and returned. The Amendment of Application with Mr. Allen's Annuity Contract prepared by MetLife listed Moore as Mr. Allen's primary beneficiary.

The letter that was enclosed with the Annuity Contract was addressed to "Dear Contract Owner," with no address included anywhere in the letter. This letter states that "[y]our new contract is enclosed." That letter also states that the Amendment of Application is enclosed, invites the owner to review the amendment for correctness and to return it with an original signature in the self-addressed stamped envelope within thirty days. In reference to the Amendment of Application form, the letter states that "[t]he enclosed Amendment of Application corrects or completes information provided on your original annuity application. Please verify that the information on the amendment is correct and return one copy with your original signature

---

[4] Defendant Kirk objects to this statement and other evidence of Mr. Allen's intent, asserting that it is barred by the parol evidence rule. The application of this rule is discussed below.

[5] This statement by Adam Bieser is not hearsay, but instead shows what the MetLife employee did after inquiring of Bieser about the blank beneficiary designation on the Allen Annuity Application.

3

to us in the postage paid envelope provided." It is not known if the letter addressed to the "Contract Owner," the Amendment of Application and Annuity Contract were sent to Mr. Allen or to Mr. Steck. It is known that Mr. Allen received the Annuity Contract. It may be, but the Court cannot rely upon the current record, that this letter, the Amendment of Application form, and the Annuity Contract were sent by MetLife to Mr. Steck, and Mr. Steck sent the Annuity Contract and the Amendment of Application form to Mr. Allen. A similar form, it appears, was sent by Steck to Moore which listed Mr. Allen as her primary beneficiary, and it requested that the Amendment of Application form be sent directly to MetLife by each. These facts can be set forth in more detail at trial.

Moore signed her Amendment to Application form on October 28, 2003 and it was received by MetLife on November 6, 2003, however, there is no record that Mr. Allen either signed or returned the form. All information MetLife received regarding Mr. Allen's intent to designate Moore as his beneficiary came orally from Adam Bieser to MetLife's representative. Even though Mr. Allen never returned a signed Amendment of Application, MetLife recognized Moore as Mr. Allen's primary beneficiary through the term of the life of Mr. Allen, and this recognition continued until the payment of the proceeds of the Annuity Contract to Moore. MetLife's recognition of Moore as Mr. Allen's beneficiary is demonstrated in the monthly account statements they generated showing Moore as Mr. Allen's 100% primary beneficiary. These statements were printed by Mr. Steck and forwarded to Mr. Allen. There is no evidence that Mr. Allen contacted either MetLife or Steck to challenge the accuracy of this designation. Additionally, Mr. Allen demonstrated that his intended beneficiary was Moore in his account reviews with Mr. Steck. Mr. Steck completed account reviews with Mr. Allen at his office at

4

least once a year. When asked at these account reviews how he wanted his beneficiary designation to be stated, Mr. Allen affirmed his selection of Moore as his beneficiary.

The Annuity Contract contained a provision declaring that "[t]he entire contract consists of this Contract, any riders or endorsements attached to this Contract, and a copy of the application, if one is attached to this Contract when issued." No evidence has been produced to the Court on whether the Annuity Application was attached to the Annuity Contract. The Annuity Contract states that:

> BENEFICIARY - The Beneficiary designation in effect on the Issue Date will remain in effect, unless changed. Unless you provide otherwise, the death benefit will be paid in equal shares or all to all to the Beneficiary(ies) as follows:
> 1. to the primary Beneficiary(ies) who survive you . . . or if there are none, then,
> 2. to the contingent Beneficiary(ies) who survive you . . . or if there are none, then,
> 3. to your estate.

Additionally, the Contract Schedule page states that the beneficiary is "[a]s designated by you as of the Issue Date unless changed in accordance with the Contract provisions."[6]

After Mr. Allen died on December 8, 2006, MetLife paid the death benefits to an account for the benefit of Moore, pursuant to her instructions. Subsequently, Defendant Kirk, the personal representative of Mr. Allen, sent a letter to MetLife. This letter was dated January 29, 2007, and it asked about any assets Mr. Allen owned. On April 19, 2007, Defendant Kirk requested a copy of the signed beneficiary page from MetLife. MetLife has not been able to locate a signed beneficiary page. There is nothing in Mr. Steck's office files that indicate that Mr. Allen contacted the office to name a beneficiary, and while the office notes narrative minutes from

---

[6] It is clear that no beneficiary was designated by Mr. Allen on the issue date, nor did MetLife ever receive an Amendment of Application or Annuity Application from Mr. Allen designating any beneficiary.

5

phone calls in their files, there is no information on the file regarding any phone call in which Mr. Allen stated who he wanted named as his beneficiary.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in

his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

### III. DISCUSSION

Mr. Allen did not designate a beneficiary on his Annuity Application, and the Court must first determine whether parol evidence may be used to resolve the ownership of the proceeds of Mr. Allen's annuity contract with MetLife. The party advocating reliance on parol evidence must establish its existence by clear and convincing evidence. *Autoquip Corp. v. Nicholson & Associates, Inc.*, 740 S.W.2d 664, 668 (Mo. Ct. App. 1987); 32A C.J.S. Evidence § 1625. "The

7

parol evidence rule is a rule of substantive law, rather than a mere rule of evidence." *J.R. Waymire Co. v. Antares Corp.*, 975 S.W.2d 243, 247 (Mo. Ct. App. 1998) (quoting *Union Elec. Co. v. Fundways, Ltd.*, 886 S.W.2d 169, 170 (Mo. Ct. App. 1994)). The parol evidence rule prohibits evidence of prior or contemporaneous oral agreements which vary, add to, or contradict the terms of an unambiguous and complete contract absent fraud, common mistake, or erroneous admission. *See id.*

Courts may consider parol evidence where a "writing is not final and complete." *Kenney v. Vansittert*, 2008 WL 5054699, at *3 (Mo. Ct. App. Dec. 2, 2008) (citing *Don King Equip. Co. v. Double D. Tractor Parts, Inc.*, 115 S.W.3d 363, 372-73 (Mo. Ct. App. 2003)). To determine if a contract is completely integrated, courts "look to the face of the document itself-without looking to the surrounding facts and circumstances." *Kenney*, 2008 WL 5054699, at *4 (citing *State ex rel. Mo. Highway & Transp. Comm'n v. Maryville Land P'ship*, 62 S.W.3d 485, 489 (Mo. Ct. App. 2001)).

The Annuity Contract states that "[t]he entire contract consists of this Contract, any riders or endorsements attached to this Contract, and a copy of the application, if one is attached to this Contract when issued." It is not clear if the Annuity Application was attached to the Annuity Contract, regardless, the Court finds that the beneficiary designation section of the Annuity Application was integrated into the Annuity Contract, and therefore part of the Annuity Contract.[7] When the Annuity Contract was sent to Mr. Steck, there was also an Amendment of Application

---

[7] The beneficiary designation section is part of the Annuity Contract through one of two separate means. First, it is incorporated if the Annuity Agreement was attached to the Annuity Contract when it was issued. Alternatively, while the Annuity Contract does not include a beneficiary designation section, it makes several references to the designation of a beneficiary, and does not indicate that the beneficiary designation is to be contained within the Annuity Contract itself. Therefore, at a minimum, the Annuity Contract includes the beneficiary designation section of the Annuity Application.

8

with a letter stating that it "corrects or completes information provided on your original annuity application." By the terms of the Annuity Contract, the letter and the Amendment of Application form are not a part of the Annuity Contract. However, the language in this letter is important, because whether this contract was completely integrated depends upon whether the Amendment of Application corrected or completed the Annuity Application. If the Amendment of Application corrected the Annuity Application, then the contract was fully integrated and complete when it was issued, and parol evidence may not be considered. However, if the Amendment of Application completed the Annuity Application, then the Annuity Contract was not fully integrated when it was issued, and parol evidence may be considered by the Court. *Kenney*, 2008 WL 5054699, at *3 (citing *Don King Equip. Co.* 115 S.W.3d at 372-73).

A written agreement is integrated if it represents a final expression of one or more terms of the agreement." *State ex rel. Missouri Highway & Transp. Com'n v. Maryville Land P'ship*, 62 S.W.3d 485, 489 (Mo. Ct. App. 2001) (citing Restatement (Second) of Contracts § 209(1)). A contract may "be either completely or partially integrated." *State ex rel. Missouri Highway & Transp. Com'n*, 62 S.W.3d at 489. If the Annuity Contract was only partially integrated when it was issued, "collateral facts and circumstances may be introduced to prove consistent additional terms." *State ex rel. Missouri Highway & Transp. Com'n*, 62 S.W.3d at 489 (citing *Craig v. Jo B. Gardiner, Inc.*, 586 S.W.2d 316, 324 (Mo. banc 1979)). In such case, the parol evidence rule would not bar evidence of intent concerning a beneficiary designation.

The beneficiary provisions in the Annuity Contract state that "[t]he Beneficiary designation in effect on the Issue Date will remain in effect, unless changed." Additionally, the Annuity Contract provides that the beneficiary is "[a]s designated by you as of the Issue Date unless changed in accordance with the Contract provisions."

9

This language is very instructive. If no beneficiary was designated when the application was filed and the Annuity Contract was issued, by operation of law, the annuity proceeds would pass to Mr. Allen's estate. Defendant Kirk assigns that it is a simple matter; there is no proof that a primary beneficiary was designated by Mr. Allen on his original application, he had the opportunity, by contract, to designate a beneficiary subsequently to applying for the Annuity, and was invited to do so by MetLife, which even prepared an Amendment of Application, listing Moore as primary beneficiary, sent it to him or Mr. Steck with a postage-paid envelope, but it was never returned. Ergo, says Kirk, the Estate of Mr. Allen is lawfully entitled to the annuity proceeds.

The Court finds that based on the evidence presented, there are genuine issues of material fact that must be presented to a fact finder, before a decision can be made as to the identity of the lawful recipient of the annuity proceeds. One interpretation of the evidence is that Mr. Allen's intent is clear. He called Mr. Steck's office several weeks after he submitted the Annuity Application, and informed Mr. Steck that he intended Moore to be his beneficiary. Mr. Allen reaffirmed this intent after the Annuity Contract was issued because he never sought to have his beneficiary changed when his monthly statements listed Moore as 100% primary beneficiary and when Mr. Steck discussed his beneficiary designation at his account reviews. In these meetings, Mr. Allen acknowledged that he had chosen to designate Moore as his beneficiary and never requested that his beneficiary be changed. Another plausible explanation is that Mr. Allen did not name a primary beneficiary in his annuity application because he wanted his estate to be his beneficiary. This proposition is bolstered by the evidence that he waited after being advised of the need to designate a beneficiary, because that matter was under consideration. While the evidence of Mr. Allen's intent to name Moore as his primary beneficiary is very persuasive, to utilize this

evidence, MetLife bears the burden of showing the existence of this evidence by clear and convincing evidence. Additional evidence at trial may be sufficient to tip the scales in that direction, but not at this stage of the case[8].

Defendant Kirk questions the veracity of Mr. Steck and points to the absence of any phone log entry noting Mr. Allen's call. However, Defendant Kirk has presented no contrary evidence or testimony to support her argument.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Estate of Julius L. Allen's Motion for Summary Judgment [doc. #19] is **DENIED.**

**IT IS FURTHER ORDERED** that MetLife Investors USA Insurance Company's Motion for Summary Judgment [doc. #22] is **DENIED**.

**IT IS FURTHER ORDERED** that Joan Moore's Motion for Summary Judgment [doc. #24] is **DENIED.**

This matter remains set for a **Non-Jury Trial** on a three-week docket beginning **February 2, 2009**, at **8:30 a.m.** in Cape Girardeau, Missouri.

Dated this 9th Day of January, 2009.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

---

[8] The Court is not ignoring the line of cases recognizing the equitable doctrine of substantial compliance to carry out the intent of an insured. *See Anglen v. Heimburger,* 803 S.W. 2d 109, 112 (Mo. App. W.D. 1990).