UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| METLIFE INVESTORS USA | ) | |
|---|---|---|
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1:07CV00130 ERW |
| | ) | |
| VERONICA L. KIRK, as Personal | ) | |
| Representative of the Estate of Julius L. Allen, | ) | |
| Deceased, and | ) | |
| | ) | |
| JOAN MOORE, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff's Complaint For Declaratory Judgment [doc. #1]. A Non-Jury Trial was conducted before the Court on February 12, 2009, and the Parties subsequently filed post-trial briefs.

## **I.  BACKGROUND**

MetLife Investors USA Insurance Company ("MetLife") filed this action on September 5, 2007, naming both Joan Moore ("Ms. Moore") and Veronica Kirk ("Ms. Kirk") as Defendants. Ms. Moore submitted a claim for death benefits under Julius L. Allen's ("Mr. Allen") Annuity Contract, and MetLife deposited the benefits in her account. Subsequently, Ms. Kirk, as the personal representative of Mr. Allen's estate, contacted Metlife to inquire about Mr. Allen's assets. Ms. Kirk claims that these benefits should have been paid to Mr. Allen's estate. MetLife asks that the Court determine whether the death benefits under the Annuity Contract were paid to

the proper party and issue "a Declaratory Judgment pursuant to 28 U.S.C. § 2201, declaring the rights and obligations of the parties with respect to the Annuity Contract."

II.     **FINDINGS OF FACT**[1]

Mr. Allen and Ms. Moore cohabited for years, but were never married. Bill Steck[2] ("Mr. Steck") is a Financial Advisor with William Steck, Inc. (d/b/a Kasper Steck Wealth Management), primarily managing retirement portfolios and working as a broker for Securities America, Inc., in St. Louis, Missouri. In February 2003, Mr. Allen and Ms. Moore, employees of SBC Communications ("SBC"), attended a workshop regarding retirement investing that Mr. Steck presented in Sikeston, Missouri, for SBC employees. After this meeting, Mr. Allen and Ms. Moore requested a meeting with Mr. Steck, who jointly met with Mr. Allen and Ms. Moore in or around May, July, and August 2003. At these meetings, Mr. Steck advised them on their retirement investment options.

On July 16, 2003, Mr. Allen executed documents opening a Premiere Select IRA with National Financial Services. This IRA was a gathering account that was used to roll Mr. Allen's lump sum distribution from his retirement from SBC and his 401(k), while the investment plan was being developed. On Mr. Allen's IRA, he named Ms. Moore as primary beneficiary, and Veronica Kirk ("Ms. Kirk") as contingent beneficiary.

---

[1] In making these findings of fact, the Court relies upon the Parties' Joint Stipulation of Uncontested Facts [doc. #42], along with testimony adduced and exhibits received at the bench Non-Jury Trial and arguments of capable counsel for the parties.

[2] Neither Bill Steck;William Steck, Inc.; or Kasper Steck Wealth Management are named parties in this litigation.

Mr. Steck assisted Mr. Allen and Ms. Moore in selecting an investment to provide each with guaranteed income. Mr. Allen and Ms. Moore each chose to invest their retirement funds in a MetLife Annuity. Mr. Allen completed the MetLife Variable Annuity Application for Account No. 3200894457 ("Annuity Application") on August 8, 2003. Neither Mr. Allen nor Ms. Moore completed the beneficiary section of their applications. Mr. Allen and Ms. Moore submitted these applications to Mr. Steck, who then submitted the forms to MetLife with the beneficiary designation section on each application blank, as both Mr. Allen and Ms. Moore stated that they were still contemplating the identity of their respective beneficiary designations.

A MetLife representative called Mr. Steck's office on August 21, 2003, regarding the blank beneficiary designations and spoke to Adam Bieser on a recorded line. The MetLife representative was told by Mr. Bieser that Ms. Moore's beneficiary was Mr. Allen, and Mr. Allen's beneficiary was Ms. Moore. Based on this telephone conversation, MetLife recorded Ms. Moore as Mr. Allen's beneficiary, and issued Mr. Allen's Annuity on September 8, 2003. At some time later, someone at MetLife addressed a letter to "Contract Owner," enclosing the Annuity Contract and an Amendment of Application Form (Joint Exhibit 3). These documents were mailed either to Mr. Allen or to Mr. Steck, for transfer to Mr. Allen. MetLife never received an executed Amendment of Application form designating beneficiaries from Mr. Allen prior to his death on December 8, 2006. MetLife did receive Ms. Moore's executed Amendment of Application dated October 28, 2003, designating Mr. Allen as her beneficiary. Mr. Allen either never returned a signed Amendment of Application to MetLife, it was lost in transit, or MetLife misplaced it. As noted hereafter, Ms. Moore testified that she saw Mr. Allen sign the Amendment of Application form, designating her as the beneficiary.

MetLife recognized Ms. Moore as Mr. Allen's primary beneficiary through the term of the life of Mr. Allen, and this recognition continued until the proceeds of the Annuity Contract were distributed to Ms. Moore. MetLife's recognition of Ms. Moore as Mr. Allen's beneficiary is demonstrated in the monthly account statements they generated showing Ms. Moore as Mr. Allen's 100% primary beneficiary. These statements were printed by Mr. Steck and forwarded to Mr. Allen. There is no evidence that Mr. Allen contacted either MetLife or Mr. Steck to challenge the accuracy of this designation or that Mr. Allen actually received the print-outs. However, Mr. Allen demonstrated that his intended beneficiary was Ms. Moore in his account reviews with Mr. Steck. Mr. Steck completed account reviews with Mr. Allen at his office at least annually. When asked at these account reviews how he wanted his beneficiary designation to be stated, Mr. Allen affirmed his selection of Ms. Moore as his beneficiary.[3]

At the Non-Jury Trial, Mr. Steck testified that he received his securities licence in 1973. He identified the Premiere Select Rollover IRA form, above described as the gathering document to aggregate assets in one place, signed by Mr. Allen naming Ms. Moore with her Social Security Number as his 100% beneficiary and Ms. Kirk as his 100% contingent beneficiary. That form was signed July 16, 2003. (Joint Exhibit 1). Mr. Steck testified that when Mr. Allen completed his MetLife Annuity Application on August 8, 2003, Ms. Moore was present. He stated that the beneficiary sections on both applications were not filled-in because Mr. Allen and Ms. Moore were considering not going 100% with each other and wanted to consider "splitting." (Joint Exhibit 2). Mr. Allen said he might want to give some of the proceeds to Ms. Kirk. Thereafter, Mr. Steck had telephone conversations with Mr. Allen and Ms. Moore, and each told him that

---

[3] This testimony of Mr. Steck is received to show how he reacted in handling Mr. Allen and Ms. Moore's accounts.

4

each wanted to name the other as 100% beneficiary.[4] Shortly thereafter, he sent the Applications to Securities-America to be forwarded to MetLife.

Mr. Steck testified that he met in person with Mr. Allen and Ms. Moore annually, and had telephone conversations with them every six months. Account statements, available to clients on-line, were downloaded by Mr. Steck and sent to Mr. Allen and Ms. Moore. These statements showed Ms. Moore as Mr. Allen's 100% beneficiary and Mr. Allen as Ms. Moore's 100% beneficiary. Mr. Steck's office records detail contact information with clients and show that he sent regular monthly "annuity statements" from November 25, 2003 through October 26, 2005. Mr. Steck testified that in annual account reviews, he would bring up beneficiary selection, and Mr. Allen told him that Ms. Moore was his beneficiary and he did not want to make changes.[5] Similarly, Ms. Moore told him that Mr. Allen was her beneficiary and she did not want to make changes. The evidence presented at the Non-Jury Trial showed that Mr. Steck held account reviews with Mr. Allen on February 13, 2006 and September 20, 2006. Prior to both of these meetings, Mr. Steck sent account review documents to Mr. Allen. Mr. Allen never said that he wanted to change the beneficiary designation. (Plaintiff's Exhibit 22).

Mr. Steck testified that he does not recall if he personally delivered the Annuity Contract to Mr. Allen, if he mailed it to Mr. Allen, or if it was mailed to Mr. Allen directly from MetLife. He has no recollection of seeing the letter addressed to "Contract Owner" that accompanied the Annuity Contract. There is no address on the letter. It states, among other things, that his new

---

[4] This evidence is received to show how Mr. Steck acted thereafter regarding the handling of Mr. Allen and Ms. Moore's Annuity Applications.

[5] This evidence is received for the limited purpose of showing how Mr. Steck handled Mr. Allen and Ms. Moore's accounts.

5

contract is enclosed, that his initial investment allocation will be reflected on his confirmation notice to be mailed separately and says that:

> The enclosed Amendment of Application corrects or completes information provided on your original annuity application. Please verify that the information on the amendment is correct and return one copy with your original signature to us in the postage paid envelope provided, . . . within 30 days of receiving this letter.

(Joint Exhibit 3 P.3). There is no record that the Amendment of Application was returned to either Mr. Steck or MetLife.

Ms. Moore testified at the Non-Jury Trial that she and Mr. Allen worked at Southwestern Bell on the same crew; she worked on cable repair and Mr. Allen worked on installation. She began working at Southwestern Bell in 1973 and saw Mr. Allen regularly after 1977. They did things together at work, helped each other, and shared lunch and break times together daily. They started living together in 1991 and lived together in her house until his death. Mr. Allen helped raise Ms. Moore's daughter. Ms. Moore testified that her daughter was six-years old when Mr. Allen moved in and that "he raised her." They never shared a bank account and they split all living expenses with her paying for groceries, cable television, electricity and sometimes car payments while Mr. Allen took care of the car, truck and house payment. They both retired from Southwestern Bell on July 12, 2003.

In 2003, she testified that she and Mr. Allen met with Mr. Steck and opened a Premiere Select Account with American Financial Services. She had a little more in her account than Mr. Allen had in his account. She decided to name Mr. Allen as beneficiary rather than her daughter. She said that her daughter was on the "irresponsibility side" and she knew that Mr. Allen would take care of her. Mr. Steck discussed possible investment alternatives and they "went with what [he] advised." She put $330,000.00 in her annuity. She signed the beneficiary designation form naming Mr. Allen as 100% beneficiary on October 28, 2003. (Plaintiff's Exhibit 13). She

6

testified that they sat at the same desk when both signed the forms. She testified that she saw him fill out the form and sign it with her as his beneficiary. She described a white envelope with green trim in which both forms were placed and the envelope was taken to the post office. She testified that he was very meticulous, that when he got something, he would fill it out immediately and take it to the post office. She testified that Mr. Steck stayed in touch with them every six months, meeting personally one time each year and the rest of the time on the phone, to discuss investments. He asked if they wanted to change anything, and they never did. Mr. Allen's monthly account forms show that Ms. Moore is his beneficiary. (Plaintiff's Exhibit 28).

Wayne Stofferahn ("Mr. Stofferahn") has worked at MetLife since April 2001. Currently, he works as a Post-Issue Analyst. He responds to contract owner complaints and is a liaison between the other representatives, Post-Issue representatives and the Law Department.

Mr. Stofferahn testified that his work with MetLife focused on annuities. He testified that he is familiar with the way MetLife handles annuity applications like Mr. Allen's. He testified that when the application comes into the Support Center, it is scanned into their work flow system, and the paper application is then sent to an off-storage site. The images of the form are sent to the New Business area. New Business then reviews the information for completeness and accuracy. If the application is complete and accurate, the contract is issued. If the information is not complete or if there is some question regarding information, MetLife will contact the broker or applicant or proposed owner for the information. If MetLife is unable to complete the contract the funds are returned to their source.

Mr. Stofferahn testified that MetLife never issues an annuity contract without obtaining a beneficiary designation. MetLife does not require a contingent beneficiary, only a primary beneficiary. He testified that MetLife, in this case, tried to contact the applicant, was

unsuccessful, and then contacted the broker.  Mr. Steck represented Mr. Allen and Ms. Moore for the purchase of this annuity contract.  Mr. Stofferahn testified that if MetLife gets a beneficiary designation orally on a recorded line, it does not need to get an additional designation.  He said the oral beneficiary designation on a recorded line is sufficient if the information comes from the broker, the broker's assistant, broker representative or the applicant.

Mr. Stofferahn testified that MetLife then sends an Amendment of Application form after it gets a recorded oral beneficiary designation for "[f]urther confirmation that that is the information that was provided to us."  When MetLife gets an oral designation on a recorded phone line, they key it or type it to the administrative system, and the designee would be the beneficiary of record at that point.  If Metife does not receive a signed Amendment of Application within thirty days, it does not change its records.  He reviewed Plaintiff's Exhibit 28, the print-outs from MetLife showing Ms. Moore as Mr. Allen's beneficiary.  Mr. Stofferahn testified, in answer to a question by the Court, that if the beneficiary designation was left blank, the applicant's estate would not be the beneficiary, because MetLife would not issue an annuity contract without a beneficiary being designated.

Mr. Stofferahn testified that there is no provision in the Annuity Contract that requires a beneficiary designation to be in writing, but language in the annuity contract requires any change of beneficiary designation to be in writing.  Specifically, the annuity contract, as it pertains to change of beneficiary says, "[a] change may be made by filing a notice with us.  The change will take effect as of the date the notice is signed.  We will not be liable for any payment made or action taken before we receive the change." (Joint Exhibit 3).  Mr. Stofferahn's testimony that MetLife would not issue an annuity contract without a beneficiary being designated and his

8

testimony that there is no requirement in the contract language that the beneficiary must be designated in writing is persuasive.

Mr. Allen died on December 8, 2006. Ms. Moore then submitted a claim to MetLife dated December 20, 2006, for benefits under Mr. Allen's Annuity. MetLife paid the death benefits in the amount of $410,109.79 to Ms. Moore by check dated January 11, 2007. On January 29, 2007, Ms. Kirk, the personal representative for Mr. Allen's estate, sent a letter to MetLife inquiring about owned assets of Mr. Allen (Joint Exhibit 5). On April 19, 2007, in a letter bearing that date, Ms. Kirk asked Mr. Steck for a copy of a signed beneficiary page. MetLife, in a dated letter of June 6, 2007, wrote Ms. Kirk explaining there was no signed beneficiary designation form bearing Mr. Allen's signature.

### III. CONCLUSIONS OF LAW

"General principles of contract interpretation apply to insurance policies." *Westchester Fire Ins. Co. v. Wallerich*, 563 F.3d 707, 712 (2009) (quoting *SECURA Supreme Ins. Co. v. M.S.M.*, 755 N.W.2d 320, 323 (Minn. Ct. App. 2008)). "If the language in an insurance contract is clear and unambiguous, this Court must construe the contract as written." *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. banc 2008) (quoting *Bellamy v. Pacific Mut. Life Ins. Co.*, 651 S.W.2d 490, 495 (Mo. banc 1983)). The provisions within this Annuity Contract should be harmonized "to avoid leaving some provisions without function or sense." *Allstate Ins. Co. v. Ibrahim*, 243 S.W.3d 452, 456 (Mo. Ct. App. 2007) (citing *Kyte v. American Family Mut. Ins. Co.*, 92 S.W.3d 295, 299 (Mo. Ct. App. 2002)).

The language of the Annuity Contract defines a beneficiary as "the person(s) or entity(ies) you name to receive a death benefit payable under this Contract or upon the death of the Owner

9

or a Joint Owner, or in certain circumstances, an Annuitant." Additionally, the Annuity Contract details how beneficiaries may be changed, stating that, "[a] change may be made by filing a notice with us. The change will take effect as of the date the notice is signed. We will not be liable for any payment made or action taken before we receive the change."

The Court must consider "the relevant policy language in context, giving effect to all of the policy's provisions, and applying a commonsense construction to such language." *Westchester Fire Ins. Co.*, 563 F.3d at 712 (internal citations omitted). The provisions detailed above are unambiguous, and the writing should be interpreted in a way that "gives effect to all its provisions and is consistent with the general intent." *Murray v. American Family Mut. Ins. Co.*, 429 F.3d 757, 766 (8th Cir. 2005) (quoting *Dent Phelps R-III School Dist. v. Hartford Fire Ins. Co.*, 870 S.W.2d 915, 920 (Mo. Ct. App. 1994)). As a result, the Court concludes that under the Annuity Contract, an initial beneficiary designation is required, but does not have to be made in writing.

This conclusion is consistent with Mr. Stofferahn's testimony about MetLife's business practices. Mr. Stofferahn testified that MetLife never issues an annuity contract without obtaining a beneficiary designation. He stated that if a beneficiary designation is not noted on an Application, MetLife will attempt to secure a beneficiary designation orally on a recorded line and does not need to get an additional designation. He said an oral beneficiary designation on a recorded line is sufficient if the information comes from the broker, the broker's assistant, broker representative or the applicant.

Ms. Kirk asserts that the Amendment of Application form that accompanied Mr. Allen's Annuity Contract is evidence that no beneficiary designation had been made, and that since no Amendment of Application was received by MetLife, the benefits should be paid to Mr. Allen's

10

estate. This argument is rebutted by Mr. Stofferahn's testimony. He stated that MetLife sends the Amendment of Application form after it gets a recorded oral beneficiary designation for "[f]urther confirmation that that is the information that was provided to us." When MetLife gets an oral designation on a recorded phone line, they key it or type it to the administrative system, and the designee would be the beneficiary of record at that point. If Metife does not receive a signed Amendment of Application within thirty days, it does not change its records. Mr. Stofferahn testified, in answer to a question by the Court, that if the beneficiary designation was left blank, the applicant's estate would not be the beneficiary because MetLife would not issue an annuity contract without a beneficiary being designated. Ms. Kirk comes forward with no rebuttal testimony.

Interpreting the Annuity Contract with no requirement for an initial beneficiary designation in writing "gives effect to all its provisions and is consistent with the general intent." *Murray*, 429 F.3d at 766 (quoting *Dent Phelps R-III School Dist.*, 870 S.W.2d at 920). The beneficiary designation made over MetLife's recorded phone line was sufficient under the Annuity Contract for an initial beneficiary designation, and it should be given effect.

Ms. Kirk is the personal representative for Mr. Allen's estate. She contacted MetLife in order to investigate the existence of Mr. Allen's assets. Ms. Kirk makes an impressive appearance. She acted responsibly in executing her authority granted by the Probate Court. The Court is persuaded, however, that under the terms of the Annuity contract and all of the facts and circumstances presented to the Court in this case, that the judgment of this Court must be that Mr. Allen's beneficiary under the terms of Annuity Contract No.3200894457 was Ms. Moore, the person to whom MetLife rightfully paid the annuity benefits under the terms of that Contract.

Accordingly,

**IT IS HEREBY ORDERED** that judgment is ordered in favor of Plaintiff MetLife. Ms. Moore was the proper payee for the death benefits under Mr. Allen's Annuity Contract. Plaintiff MetLife has no further liability with respect to the death benefits under Mr. Allen's Annuity Contract.

An appropriate Order of Judgment shall accompany this Order.

Dated this 16th day of June, 2009.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE